# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE HUNT,<br><br>        Plaintiff,<br><br>    v.<br><br>ANDRE MATEVOUSIAN, et al,<br><br>        Defendants. | Case No. 1:16-cv-01560-LJO-BAM (PC)<br><br>SCREENING ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>(ECF No. 1)<br><br>THIRTY-DAY DEADLINE |

Plaintiff Maurice Hunt ("Plaintiff") is a federal prisoner proceeding pro se and in forma pauperis under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Plaintiff's complaint, filed on October 17, 2016, is currently before the Court for screening.

**I.    Screening Requirement and Standards**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the

1

pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

*Bivens* actions and actions under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor under § 1983 by a federal actor under *Bivens*." *Van Strum v. Lawn*, 940 F.2d 406, 409 (9th Cir. 1991). Under *Bivens*, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. *See Bivens*, 403 U.S. at 397. To state a claim a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor.

**II.     Plaintiff's Allegations**

Plaintiff is currently housed at the Terre Haute Federal Correctional Institution in Terre Haute, Indiana. The events in the complaint are alleged to have occurred while Plaintiff was housed at Atwater United States Penitentiary ("Atwater") in Atwater, California. Plaintiff names the following defendants: (1) Warden Andre Matevousian; (2) Lieutenant Helling; (3) Correctional Officer W. Gunn; (4) Correctional Officer Graham; (5) Correctional Officer

2

Hellmuth; (6) Correctional Officer G. Villegas; (7) Atwater's Medical Department; (8) Associate Warden Snider; (9) Facility Captain Garcia; (10) Western Regional Office, Bureau of Prisons; and (11) Central Office, Bureau of Prisons.

Claim 1:

In claim 1, Plaintiff alleges that on August 6, 2015, he was assaulted by Correctional Officers Helling, W. Gunn, and Graham. Correctional Officer Hellmuth was watching, but did not participate. Plaintiff asserts that earlier that day, he had been complaining to Correctional Officer Hansen that he needed access to a handicap toilet and shower due to his disability, which had been an ongoing request since Plaintiff's arrival at Atwater on July 21, 2015.

On July 30, 2015, Plaintiff spoke directly to the Warden regarding his handicap needs and appropriate housing to accommodate his disability, Plaintiff pointed out to the Warden, while he was standing at the entrance of Plaintiff's cell, that the cell lacked any handrails or pull bars around the toilet or shower. The Warden advised that he had been on vacation the week of Plaintiff's arrival. Plaintiff further informed the Warden that Captain Garcia confiscated Plaintiff's assistive devices, which were authorized by Atwater Medical Personnel on the day of his arrival. The Warden informed Plaintiff that his medically prescribed assistive devices would be returned and he would have Plaintiff moved to handicap housing.

The next day, on July 31, 2015, Associate Warden Snider came to Plaintiff's cell in the SHU and brought him a cane, orthotic foot brace and ankle guard. Plaintiff inquired about his other medically prescribed assistive devices and assignment to a handicap accessible cell. Associate Warden Snider informed Plaintiff that the handicap accessible cell in the SHU was inoperable and that was all of the assistive devices that Plaintiff was getting.

On August 4, 2015, Plaintiff again spoke to Associate Warden Snider about access to a handicap accessible toilet and shower. Plaintiff informed Associate Warden Snider that prisons are required to provide handicap accessible showers and toilets pursuant to Supreme Court opinion. Associate Warden Snider again informed Plaintiff that cell #112 was inoperable and there were no other handicap accessible cells available.

On August 6, 2015, Plaintiff and his cellmate were ordered to pack in order to move to

cell #112. Plaintiff immediately inquired as to the operability of the cell, but staff members did not know. Approximately 20 minutes later, Plaintiff and his cellmate were transferred to cell #112. Upon entering the cell, Plaintiff saw why the Associate Warden informed him that the cell was inoperable. The shower was broken, with the handicap seat dangling attached to strips of torn sheets. Plaintiff began to protest that not only did the cell not accommodate his disability, but it also posed a clear hazard to his safety. At this point, Lieutenant Helling told Plaintiff that he was getting sick of his complaining. Plaintiff countered that the cell was out of compliance with the Americans with Disabilities Act. Lieutenant Helling told Plaintiff that he either went into cell #112 or back to his previous cell. Plaintiff verbally objected to both. Lieutenant Helling then told Plaintiff's cellmate to step out of the cell and that he did not need to be a part of what was going to happen to Plaintiff. Plaintiff was then left alone in cell #112 while restrained in handcuffs. About 10 minutes later, Lieutenant Helling returned and informed Plaintiff that someone from the facilities department was coming to fix the shower and he was temporarily placing Plaintiff in another cell while the cell was being fixed.

Plaintiff was wheeled to another cell and pushed inside, where he remained strapped in the restraint chair in handcuffs. After about 30-40 minutes, the facility worker was standing outside Plaintiff's cell. Plaintiff asked if he fixed the shower. The facility worker informed Plaintiff that he was unable to fix the shower properly and he would need a new shower seat. About 5 minutes later, Lieutenant Helling returned and ordered his staff to wheel Plaintiff to cell #112. Plaintiff verbally objected, informing Lieutenant Helling what the facility worker told him and demanding the basic necessities of a handicap accessible toilet and shower. Lieutenant Helling ordered Correctional Officer Graham to remove the straps that were restraining Plaintiff to the restraint chair. Once the straps were removed, Lieutenant Helling ordered Plaintiff to get out of the chair while still handcuffed and enter the cell. Plaintiff refused, reiterating his request for handicap accommodations. Lieutenant Helling and Officer Graham then lifted Plaintiff out of the chair and walked him into the center of the cell where Correctional Office W. Gunn waited. Plaintiff was turned around to face the entrance of the cell. Seconds after Plaintiff stopped walking, Lieutenant Helling and Correctional Officers Gunn and Graham began to punch Plaintiff in the back and the

side of his head with closed fists. After numerous punches, Lieutenant Helling slammed Plaintiff on the ground and all three started kicking Plaintiff repeatedly in the leg and side torso until Lieutenant Helling yelled at them to stop. During the assault, Correctional Officer Hellmuth stood at the entrance of the cell doorway and watched. Plaintiff alleges that Defendant Hellmuth failed to act to protect him from the assault.

Once the assault stopped, Lieutenant Helling ordered Correctional Officer Hellmuth to get some shackles and a camera. Plaintiff was then placed in the restraint chair, strapped in and wheeled to see a nurse. Plaintiff immediately told the nurse that he had been assaulted. While detailing the assault, the nurse told the officers to get him out of there because he was being uncooperative. Plaintiff contends that he received no medical attention, though he was in great pain. Plaintiff was then wheeled back to cell #112 and placed on the floor of the cell still restrained, where he was left for a couple of hours.

Plaintiff asserts that Warden Matevousian was aware that Plaintiff had been complaining daily of the confiscation of his assistive devices and lack of access to a handicap toilet and shower. Warden Matevousian also was aware that Captain Garcia had assembled numerous use-of-force teams that were used for movement to and from the shower area as well as the housing units. Plaintiff alleges that the Warden knew or should have known, or was deliberately indifferent to the situation that Plaintiff was complaining about and that this may lead to the assault. Plaintiff further alleges that Warden Matevousian has a duty to protect inmates from staff abuse once he becomes aware that there is an ongoing problem between staff and an inmate. Plaintiff contends that the Warden failed to act to prevent an escalation of events that resulted in Plaintiff being assaulted.

Plaintiff further alleges that Captain Garcia created the atmosphere that led to Plaintiff's assault. Plaintiff contends that Captain Garcia assembled a use of force team to greet Plaintiff upon his arrival at Atwater and immediately confiscated his assistive devices. Plaintiff also contends that Captain Garcia assembled 3-4 use of force teams against Plaintiff, and by August 6, 2015, it was widely known by prison staff that Plaintiff was a problem inmate. Plaintiff alleges that Captain Garcia knew or should have known or was deliberately indifferent that his orders to

5

staff to assemble use of force teams to deal with a handicapped inmate was a potentially serious situation that may lead to Plaintiff being assaulted by staff.

Claim 2

In claim 2, Plaintiff alleges that on November 26, 2015, he was assaulted by Correctional Officer G. Villegas. After the assault, a lieutenant responded to Plaintiff's location to take photographs of his injured left hand. The next morning, paramedic staff Stacey Vasquez responded to Plaintiff's cell to assess his injured hand. Without looking at his hand, Paramedic Vasquez informed Plaintiff that he would be placed on the list for x-rays and to see the doctor. Several days later, Plaintiff was transported to the x-ray department, but no x-ray was taken. The x-ray tech claimed that her paperwork reflected that it was Plaintiff's right hand that was injured and that she was only authorized to x-ray his right hand. The next day, Plaintiff informed Paramedic Vasquez about the x-ray. Paramedic Vasquez informed Plaintiff that she would submit the request again reflecting his left hand. Plaintiff alleges that he never received any x-ray of his left hand or any treatment for it. Plaintiff informed the Western and Regional Offices that he had been denied medical treatment, but both offices failed to act on his written complaints.

Claim 3

In claim 3, Plaintiff alleges that on November 26, 2015, he was assaulted by Correctional Officer G. Villegas during the dinnertime meal. Plaintiff contends that he was standing at his cell door with his hand on the open food port door attempting to complain to Correctional Officer Villegas about the quantity of his meal. Realizing that his attempt to informally resolve the issue was futile, Plaintiff requested to speak to the on-duty lieutenant or duty officer. Officer Villegas became upset that Plaintiff was requesting to speak to his supervisor. Officer Villegas told Plaintiff that he was not talking to anyone and ordered Plaintiff to remove his hand from the door or he would break it. Plaintiff told Officer Villegas that he was not going to remove his hand until he spoke with the Lieutenant as he believed that Officer Villegas had tampered with the quantity of his meal. Officer Villegas then slammed up the tray door, smashing Plaintiff's hand between the tray door and the cell door. Plaintiff began screaming, while Officer Villegas continued to apply pressure. After about a minute and a half, Officer Villegas let the tray door

6

fall over, looked through the tray door into the cell and snatched Plaintiff's walking cane, causing Plaintiff to fall to the ground. Plaintiff asked to see medical for his hand and to speak with the Lieutenant. Officer Villegas snatched the cane out of the cell and shouted that he was going to write Plaintiff up for assaulting him with the cane. Officer Villegas then closed the tray door and exited with the cane.

**III. Discussion**

**A. Federal Rules of Civil Procedure 18 and 20**

Plaintiff raises numerous claims against different defendants based on different events. However, Plaintiff may not bring unrelated claims against unrelated parties in a single action. Fed. R. Civ. P. 18(a), 20(a)(2); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff only may bring a claim against multiple defendants so long as (1) the claim arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact. Fed. R. Civ. P. 20(a)(2); *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997); *Desert Empire Bank v. Insurance Co. of North America*, 623 F.2d 1371, 1375 (9th Cir. 1980). Only if the defendants are properly joined under Rule 20(a) will the Court review the other claims to determine if they may be joined under Rule 18(a), which permits the joinder of multiple claims against the same party.

Plaintiff may not assert a claim for excessive force arising out of events on August 6, 2015, while simultaneously asserting an excessive force claim against Officer Villegas and denial of medical care claim arising out of events on November 26, 2015. In other words, Plaintiff may not simultaneously pursue his allegations in claim 1 in the same action as his allegations in claims 2 and 3 because those claims do not arise out of the same transaction, occurrence or series of transactions or occurrences.

**B. Supervisory Liability**

Plaintiff may not bring a claim against any defendants, including the Warden, Associate Warden, Facility Captain Garcia and the Western and Central Offices of the Bureau of Prisons, based on a theory of supervisory liability. *Iqbal*, 556 U.S. at 677 ("In a § 1983 suit or a *Bivens* action ... the term "supervisory liability" is a misnomer.") A government official is only liable for

his or her own misconduct. *Id*. Here, Plaintiff has failed to allege facts sufficient to demonstrate that the supervisory defendants caused or contributed to any of the claimed excessive force violations. Plaintiff's allegations related to the Warden, Associate Warden and Captain Garcia are too attenuated and conclusory to suggest liability in this instance. There is no indication that any of these defendants directed the use of force at issue in the August 6, 2015 event.

### C. Duplicative Claims

On September 25, 2015, Plaintiff filed *Maurice Hunt v. Warden Matevousian, et al.,* Case No. 1:15-cv-01456-DAD-SAB, which involved claims regarding the denial of assistive devices and a handicap accessible cell against Defendants Matevousian, Associate Warden Snider, Facility Captain Garcia, Lieutenant Helling, Lieutenant Putnam, and Dr. N. Peikar. That action is currently on appeal to the Ninth Circuit. Although his complaint in this action includes allegations regarding the denial of assistive devices and a handicap accessible cell, Plaintiff admits that he has pursued such claims in a separate action, and does not appear to reassert them here as separate claims. (ECF No. 1 at p. 4.) Nonetheless, to the extent Plaintiff is attempting to pursue them here, he may not do so as they are duplicative of claims in his prior action. *See*, *e.g.*, *Adams v. California Dep't of Health Servs.,* 487 F.3d 684, 688 (9th Cir. 2007), *overruled on other grounds by Taylor v. Sturgell*, 553 U.S. 880, 904 (2008).

### D. Violation of Fifth and Fourteenth Amendments

Although not entirely clear, it appears that Plaintiff is attempting to assert a due process or equal protection claim by invoking both the Fourteenth and Fifth Amendments to the United States Constitution. As a federal prisoner, however, Plaintiff's purported due process or equal protection claim is secured by the Fifth Amendment, not the Fourteenth Amendment. *Castillo v. McFadden*, 399 F.3d 993, 1002 n. 5 (9th Cir. 2005) ( "The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations without due process by the several States."); *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1170 n. 4 (9th Cir.2007) (Fifth Amendment's Due Process Clause subjects the federal government to constitutional limitations that are equivalent of those imposed on the states by the Equal Protection Clause of the

Fourteenth Amendment) (citations and quotations omitted). Accordingly, Plaintiff cannot state a cognizable Fourteenth Amendment claim.

Insofar as Plaintiff is attempting to pursue a claim for violation of the Fifth Amendment, his allegations provide no indication that he suffered an equal protection or due process violation. As discussed more fully below, Plaintiff shall be granted leave to amend his complaint to allege a violation of the Fifth Amendment, if he so chooses.

**E. Eighth Amendment – Excessive Force**

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). The unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Hudson v McMillian*, 503 U.S. 1, 5 (1992) (citations omitted). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (quotations omitted).

For claims of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Relevant factors for this consideration include "the extent of injury...[,] the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.' " *Id.* (quoting *Whitley v. Albers*, 475 U.S. 1078, 1085 (1986)).

Plaintiff has alleged that Defendants Helling, Gunn, and Graham assaulted him on August 6, 2015. Those allegations are sufficient to state a cognizable claim for excessive force in violation of the Eighth Amendment. Plaintiff also has alleged that Defendant Hellmuth failed to intervene to stop the assault. Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer*, 511 U.S. at 832-33; *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). "[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene." *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). A prison official may be held liable under the Eighth Amendment "only if he knows that inmates face a substantial

9

risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Plaintiff's allegations are sufficient to state a cognizable claim against Defendant Hellmuth for failure to intervene arising out of events on August 6, 2015.

Plaintiff also has alleged that Defendant Villegas assaulted him on November 26, 2015. Those allegations also are sufficient to state a cognizable claim for excessive force in violation of the Eighth Amendment. However, as discussed above, these claims are not properly joined in this action. Plaintiff shall be granted leave to amend his complaint and in so doing shall choose which claims he wishes to pursue in this action.

### F. Eighth Amendment - Denial of Medical Care

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Plaintiff must show (1) a serious medical need and (2) defendant's response to the need was deliberately indifferent. *Jett*, 439 F.3d at 1096. Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). To establish a deliberate indifference claim arising from a delay in providing medical care, a plaintiff must allege facts showing that the delay was harmful. *See Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994); *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989); *Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff's allegations are insufficient to state a claim against Atwater Medical Staff or the Bureau of Prisons Offices. First, Plaintiff has not alleged any harm resulting from the delay in receiving an x-ray. To the extent that the order for an x-ray improperly identified his right hand, a complaint of negligence does not state a valid claim under the Eighth Amendment. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012). Second, Plaintiff has not alleged any harm to his hand resulting from the failure to receive x-rays or the failure to receive treatment. Third, Plaintiff has failed to adequately identify individual Atwater Medical Staff or Bureau of Prison Offices staff and has failed to link them to a violation of his constitutional rights. Although

Plaintiff may sue individual prison employees for damages under *Bivens*, he must link each named defendant to a violation of his constitutional rights; as discussed above, there is no respondeat superior liability under *Bivens*. *Iqbal*, 556 U.S. at 676-77; *Starr v. Baca*, 652 F.3d 1202, 1205-08 (9th Cir. 2011), *cert. denied*, 566 U.S. 982 (2012); *Serra v. Lappin*, 600 F.3d 1191, 1200 (9th Cir. 2010).

### IV. Conclusion and Order

Based on the foregoing, Plaintiff has stated a cognizable claim for excessive force against Defendants Helling, Gunn and Graham and a failure to intervene claim against Defendant Hellmuth arising out of allegations that Plaintiff was assaulted on August 6, 2015. Plaintiff also has stated a cognizable claim for excessive force against Defendant Villegas arising out of events on November 26, 2015. However, claims regarding the events of August 6, 2015 and claims regarding events of November 26, 2015 are improperly joined in this action. Additionally, Plaintiff has failed to state any other cognizable claims. The Court will grant Plaintiff leave to amend to cure the identified deficiencies to the extent he is able to do so in good faith. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, *Iqbal*, 556 U.S. at 678-79, 129 S.Ct. at 1948-49. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). Plaintiff also may not improperly join claims in this action. In any amended complaint, Plaintiff must choose which claims he seeks to pursue in this action. If he fails to do so, the Court will dismiss any improperly joined claims.

Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. *Lacey v. Maricopa Cty.*, 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading."

Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a complaint form;
2. Plaintiff's complaint is dismissed with leave to amend;
3. Within thirty (30) days from the date of service of this order, Plaintiff shall file a first amended complaint;
4. **If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed for failure to obey a court order**.

IT IS SO ORDERED.

Dated: **November 16, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE