# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MAURICE HUNT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MATEVOUSIAN, et al.,<br><br>　　　　Defendants. | Case No. 1:16-cv-01560-LJO-BAM (PC)<br><br>ORDER VACATING SCREENING ORDER OF NOVEMBER 17, 2017 (ECF No. 16)<br><br>**AMENDED** SCREENING ORDER AND FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.　Background**

Plaintiff Maurice Hunt ("Plaintiff") is a federal prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971).

On November 17, 2017, the Court issued a screening order granting Plaintiff leave to file a first amended complaint. (ECF No. 16.) The Court found that Plaintiff stated a cognizable claim for excessive force against Defendants Helling, Gunn, and Graham and a failure to intervene claim against Defendant Hellmuth arising out of allegations that Plaintiff was assaulted on August 6, 2015. Plaintiff also stated a cognizable claim for excessive force against Defendant Villegas arising out of events on November 26, 2015. Plaintiff failed to state any other cognizable claims. Plaintiff was informed that claims regarding the events of August 6, 2015 and

1

claims regarding the events of November 26, 2015 were improperly joined in this action. (Id.)

On December 14, 2017, Plaintiff filed a motion for clarification of the Court's screening order, requesting that the Court consider the prejudice to Plaintiff by dismissing this action rather than severing the improperly joined claims, due to potential statute of limitation issues. (ECF No. 17.) On December 18, 2017, the Court issued an order granting the motion. (ECF No. 18.) The order explained that Plaintiff must file a first amended complaint to pursue claims in this action, and at that time the Court would conduct the appropriate prejudice analysis and address the disposition of any improperly joined claims.[1] The Court extended the deadline for Plaintiff to file a first amended complaint until thirty days following service of that order. (Id.)

On January 8, 2018, Plaintiff filed a notice of appeal. (ECF No. 19.) As no final order had been entered in this action, the Court treated Plaintiff's appeal as an interlocutory appeal. Thus, when Plaintiff failed to file a first amended complaint within the allotted time, the Court issued findings and recommendations recommending dismissal of this action, without prejudice, due to Plaintiff's failure to obey a court order and failure to prosecute. (ECF No. 22.) Plaintiff timely filed objections on February 9, 2018, arguing that he believed, in good faith, that the filing of his notice of appeal divested the Court of jurisdiction over this action, and therefore he was not required to file an amended complaint. (ECF No. 23.)

On February 27, 2018, the Court of Appeals for the Ninth Circuit issued an order dismissing Plaintiff's appeal for lack of jurisdiction because the orders challenged in the appeal were not final or appealable. (ECF No. 24.)

In light of Plaintiff's *pro se* status and the filing of his notice of appeal, the Court found it appropriate to vacate its findings and recommendations and granted Plaintiff a final opportunity to file a first amended complaint. (ECF No. 25.)

On May 14, 2018, Plaintiff filed a motion again requesting that the Court sever any claims it considers improperly joined in the original complaint, in consideration of the prejudicial impact of requiring Plaintiff to file a first amended complaint. (ECF No. 27.) Plaintiff further requests

---

[1] In that order, the Court also noted the Supreme Court's recent decision in Ziglar v. Abbasi, 137 S. Ct. 1843 (2017), but expressed no opinion at that time whether a Bivens remedy would be available to Plaintiff under that standard.

that the Court issue an order directing prison officials at the institution where he was recently transferred to provide Plaintiff with his legal property, specifically a copy of his original complaint. The Court construes this request as a motion for preliminary injunctive relief. Finally, Plaintiff requests a thirty-day continuance due to his lack of legal property. (Id.)

Upon further consideration and review of Plaintiff's motion, it is apparent that Plaintiff does not wish to file a first amended complaint to correct the deficiencies identified in the Court's prior screening order, including the improper joinder of claims. Therefore, the Court VACATES the November 17, 2017 screening order, (ECF No. 16), and issues the following Amended Screening Order and Findings and Recommendations.

## II. Findings and Recommendations on Complaint

### A. Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially

plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

Bivens actions and actions under 42 U.S.C. § 1983 "are identical save for the replacement of a state actor under § 1983 by a federal actor under Bivens." Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir.1991). Under Bivens, a plaintiff may sue a federal officer in his or her individual capacity for damages for violating the plaintiff's constitutional rights. See Bivens, 403 U.S. at 397. To state a claim a plaintiff must allege: (1) that a right secured by the Constitution of the United States was violated, and (2) that the alleged violation was committed by a federal actor.

**B.   Bivens Actions Following Ziglar v. Abbasi**

The Supreme Court has recently made clear that "expanding the Bivens remedy is now a disfavored judicial activity," and has "consistently refused to extend Bivens to any new context or new category of defendants. Ziglar v. Abbasi, 137 S.Ct. 1843, 1857 (2017) (citations omitted). Ziglar sets forth a two-part test to determine whether a Bivens claim may proceed. A district court must first consider whether the claim presents a new context from previously established Bivens remedies. If so, it must then apply a "special factors" analysis to determine whether "special factors counsel hesitation" in expanding Bivens absent affirmative action by Congress. Id. at 1857, 1875.

"If [a] case is different in a meaningful way from previous Bivens cases decided by [the Supreme Court], the context is new." Id. at 1859. Ziglar provides several examples of differences meaningful enough to make a given context a new one, including "the constitutional right at issue." Id. at 1860. To date, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. See Bivens, 403 U.S. 388 (Fourth Amendment prohibition against unreasonable searches and seizures); Davis v. Passman, 442 U.S. 228 (1979) (Fifth Amendment gender-discrimination); Carlson v. Green, 446 U.S. 14 (1980)

4

(Eighth Amendment Cruel and Unusual Punishments Clause).

If the claim presents a new context in Bivens, the court must consider whether there are special factors counseling against extension of Bivens into this area. "[T]he inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." Ziglar, 137 S.Ct. at 1857–58. This requires the court to assess the impact on governmental operations system-wide, including the burdens on government employees who are sued personally, as well as the projected costs and consequences to the government itself. Id. at 1858. In addition, "if there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Id.

**C.     Plaintiff's Allegations**

Plaintiff is currently housed at the U.S. Penitentiary Canaan in Waymart, Pennsylvania. The events in the complaint are alleged to have occurred while Plaintiff was housed at Atwater United States Penitentiary ("Atwater") in Atwater, California. Plaintiff names the following defendants: (1) Warden Andre Matevousian; (2) Lieutenant Helling; (3) Correctional Officer W. Gunn; (4) Correctional Officer Graham; (5) Correctional Officer Hellmuth; (6) Correctional Officer G. Villegas; (7) Atwater's Medical Department; (8) Associate Warden Snider; (9) Facility Captain Garcia; (10) Western Regional Office, Bureau of Prisons; and (11) Central Office, Bureau of Prisons.

Claim 1:

In claim 1, Plaintiff alleges that on August 6, 2015, he was assaulted by Correctional Officers Helling, W. Gunn, and Graham. Correctional Officer Hellmuth was watching, but did not participate. Plaintiff asserts that earlier that day, he had been complaining to Correctional Officer Hansen that he needed access to a handicap toilet and shower due to his disability, which had been an ongoing request since Plaintiff's arrival at Atwater on July 21, 2015.

On July 30, 2015, Plaintiff spoke directly to the Warden regarding his handicap needs and appropriate housing to accommodate his disability, Plaintiff pointed out to the Warden, while he was standing at the entrance of Plaintiff's cell, that the cell lacked any handrails or pull bars

around the toilet or shower. The Warden advised that he had been on vacation the week of Plaintiff's arrival. Plaintiff further informed the Warden that Captain Garcia confiscated Plaintiff's assistive devices, which were authorized by Atwater Medical Personnel on the day of his arrival. The Warden informed Plaintiff that his medically prescribed assistive devices would be returned and he would have Plaintiff moved to handicap housing.

The next day, on July 31, 2015, Associate Warden Snider came to Plaintiff's cell in the SHU and brought him a cane, orthotic foot brace and ankle guard. Plaintiff inquired about his other medically prescribed assistive devices and assignment to a handicap accessible cell. Associate Warden Snider informed Plaintiff that the handicap accessible cell in the SHU was inoperable and that was all of the assistive devices that Plaintiff was getting.

On August 4, 2015, Plaintiff again spoke to Associate Warden Snider about access to a handicap accessible toilet and shower. Plaintiff informed Associate Warden Snider that prisons are required to provide handicap accessible showers and toilets pursuant to Supreme Court opinion. Associate Warden Snider again informed Plaintiff that cell #112 was inoperable and there were no other handicap accessible cells available.

On August 6, 2015, Plaintiff and his cellmate were ordered to pack in order to move to cell #112. Plaintiff immediately inquired as to the operability of the cell, but staff members did not know. Approximately 20 minutes later, Plaintiff and his cellmate were transferred to cell #112. Upon entering the cell, Plaintiff saw why the Associate Warden informed him that the cell was inoperable. The shower was broken, with the handicap seat dangling attached to strips of torn sheets. Plaintiff began to protest that not only did the cell not accommodate his disability, but it also posed a clear hazard to his safety. At this point, Lieutenant Helling told Plaintiff that he was getting sick of his complaining. Plaintiff countered that the cell was out of compliance with the Americans with Disabilities Act. Lieutenant Helling told Plaintiff that he either went into cell #112 or back to his previous cell. Plaintiff verbally objected to both. Lieutenant Helling then told Plaintiff's cellmate to step out of the cell and that he did not need to be a part of what was going to happen to Plaintiff. Plaintiff was then left alone in cell #112 while restrained in handcuffs. About 10 minutes later, Lieutenant Helling returned and informed Plaintiff that

someone from the facilities department was coming to fix the shower and he was temporarily placing Plaintiff in another cell while the cell was being fixed.

Plaintiff was wheeled to another cell and pushed inside, where he remained strapped in the restraint chair in handcuffs. After about 30-40 minutes, the facility worker was standing outside Plaintiff's cell. Plaintiff asked if he fixed the shower. The facility worker informed Plaintiff that he was unable to fix the shower properly and he would need a new shower seat. About 5 minutes later, Lieutenant Helling returned and ordered his staff to wheel Plaintiff to cell #112. Plaintiff verbally objected, informing Lieutenant Helling what the facility worker told him and demanding the basic necessities of a handicap accessible toilet and shower. Lieutenant Helling ordered Correctional Officer Graham to remove the straps that were restraining Plaintiff to the restraint chair. Once the straps were removed, Lieutenant Helling ordered Plaintiff to get out of the chair while still handcuffed and enter the cell. Plaintiff refused, reiterating his request for handicap accommodations. Lieutenant Helling and Officer Graham then lifted Plaintiff out of the chair and walked him into the center of the cell where Correctional Office W. Gunn waited. Plaintiff was turned around to face the entrance of the cell. Seconds after Plaintiff stopped walking, Lieutenant Helling and Correctional Officers Gunn and Graham began to punch Plaintiff in the back and the side of his head with closed fists. After numerous punches, Lieutenant Helling slammed Plaintiff on the ground and all three started kicking Plaintiff repeatedly in the leg and side torso until Lieutenant Helling yelled at them to stop. During the assault, Correctional Officer Hellmuth stood at the entrance of the cell doorway and watched. Plaintiff alleges that Defendant Hellmuth failed to act to protect him from the assault.

Once the assault stopped, Lieutenant Helling ordered Correctional Officer Hellmuth to get some shackles and a camera. Plaintiff was then placed in the restraint chair, strapped in and wheeled to see a nurse. Plaintiff immediately told the nurse that he had been assaulted. While detailing the assault, the nurse told the officers to get him out of there because he was being uncooperative. Plaintiff contends that he received no medical attention, though he was in great pain. Plaintiff was then wheeled back to cell #112 and placed on the floor of the cell still restrained, where he was left for a couple of hours.

Plaintiff asserts that Warden Matevousian was aware that Plaintiff had been complaining daily of the confiscation of his assistive devices and lack of access to a handicap toilet and shower. Warden Matevousian also was aware that Captain Garcia had assembled numerous use-of-force teams that were used for movement to and from the shower area as well as the housing units. Plaintiff alleges that the Warden knew or should have known, or was deliberately indifferent to the situation that Plaintiff was complaining about and that this may lead to the assault. Plaintiff further alleges that Warden Matevousian has a duty to protect inmates from staff abuse once he becomes aware that there is an ongoing problem between staff and an inmate. Plaintiff contends that the Warden failed to act to prevent an escalation of events that resulted in Plaintiff being assaulted.

Plaintiff further alleges that Captain Garcia created the atmosphere that led to Plaintiff's assault. Plaintiff contends that Captain Garcia assembled a use of force team to greet Plaintiff upon his arrival at Atwater and immediately confiscated his assistive devices. Plaintiff also contends that Captain Garcia assembled 3-4 use of force teams against Plaintiff, and by August 6, 2015, it was widely known by prison staff that Plaintiff was a problem inmate. Plaintiff alleges that Captain Garcia knew or should have known or was deliberately indifferent that his orders to staff to assemble use of force teams to deal with a handicapped inmate was a potentially serious situation that may lead to Plaintiff being assaulted by staff.

Claim 2

In claim 2, Plaintiff alleges that on November 26, 2015, he was assaulted by Correctional Officer G. Villegas. After the assault, a lieutenant responded to Plaintiff's location to take photographs of his injured left hand. The next morning, paramedic staff Stacey Vasquez responded to Plaintiff's cell to assess his injured hand. Without looking at his hand, Paramedic Vasquez informed Plaintiff that he would be placed on the list for x-rays and to see the doctor. Several days later, Plaintiff was transported to the x-ray department, but no x-ray was taken. The x-ray tech claimed that her paperwork reflected that it was Plaintiff's right hand that was injured and that she was only authorized to x-ray his right hand. The next day, Plaintiff informed Paramedic Vasquez about the x-ray. Paramedic Vasquez informed Plaintiff that she would

submit the request again reflecting his left hand. Plaintiff alleges that he never received any x-ray of his left hand or any treatment for it. Plaintiff informed the Western and Regional Offices that he had been denied medical treatment, but both offices failed to act on his written complaints.

Claim 3

In claim 3, Plaintiff alleges that on November 26, 2015, he was assaulted by Correctional Officer G. Villegas during the dinnertime meal. Plaintiff contends that he was standing at his cell door with his hand on the open food port door attempting to complain to Correctional Officer Villegas about the quantity of his meal. Realizing that his attempt to informally resolve the issue was futile, Plaintiff requested to speak to the on-duty lieutenant or duty officer. Officer Villegas became upset that Plaintiff was requesting to speak to his supervisor. Officer Villegas told Plaintiff that he was not talking to anyone and ordered Plaintiff to remove his hand from the door or he would break it. Plaintiff told Officer Villegas that he was not going to remove his hand until he spoke with the Lieutenant as he believed that Officer Villegas had tampered with the quantity of his meal. Officer Villegas then slammed up the tray door, smashing Plaintiff's hand between the tray door and the cell door. Plaintiff began screaming, while Officer Villegas continued to apply pressure. After about a minute and a half, Officer Villegas let the tray door fall over, looked through the tray door into the cell and snatched Plaintiff's walking cane, causing Plaintiff to fall to the ground. Plaintiff asked to see medical for his hand and to speak with the Lieutenant. Officer Villegas snatched the cane out of the cell and shouted that he was going to write Plaintiff up for assaulting him with the cane. Officer Villegas then closed the tray door and exited with the cane.

**D.      Discussion**

**1.      Violation of Fifth and Fourteenth Amendments**

Although not entirely clear, it appears that Plaintiff is attempting to assert a due process or equal protection claim by invoking both the Fourteenth and Fifth Amendments to the United States Constitution. As a federal prisoner, however, Plaintiff's purported due process or equal protection claim is secured by the Fifth Amendment, not the Fourteenth Amendment. Castillo v. McFadden, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal

government from depriving persons of due process by the several States."); Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1170 n.4 (9th Cir. 2007) (Fifth Amendment's Due Process Clause subjects the federal government to constitutional limitations that are equivalent of those imposed on the states by the Equal Protection Clause of the Fourteenth Amendment) (citations and quotations omitted). Accordingly, Plaintiff cannot state a cognizable Fourteenth Amendment claim.

Insofar as Plaintiff is attempting to pursue a claim for violation of the Fifth Amendment, as noted above, the Supreme Court has only recognized a Bivens remedy in the context of the Fourth, Fifth, and Eighth Amendments. Ziglar, 137 S.Ct. at 1860 (Supreme Court has approved three Bivens claims in the past: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma.") (internal citations omitted).

The Supreme Court has never recognized a Bivens remedy for a Fifth Amendment due process claim relating to the alleged failure of a prison official to provide due process. As Plaintiff's Fifth Amendment claim clearly presents a new context in Bivens, this requires the consideration of any special factors counseling against extension of Bivens into this area, including whether there is any alternative, existing process for protecting Plaintiff's interests.

As discussed in Ziglar, "the existence of alternative remedies usually precludes a court from authorizing a Bivens action." Ziglar, 137 S.Ct. at 1865. It is clear that Plaintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process, the filing of a writ of habeas corpus, and injunctive relief.

Moreover, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." Id. As noted by the Supreme Court:

> Some 15 years after Carlson was decided, Congress passed the Prison Litigation Reform Act of 1995, which made comprehensive changes to the way prisoner abuse claims must be brought in federal court. So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs. This Court has said in dicta that the Act's exhaustion provisions would apply to Bivens suits. But the Act itself does not provide for a standalone damages remedy against federal jailers. It could be

    argued that this suggests Congress chose not to extend the Carlson damages remedy to cases involving other types of prisoner mistreatment.

Id. (internal citations omitted). Congress has been active in the area of prisoners' rights, and its actions do not support the creation of a new Bivens claim.

  For the foregoing reasons, the Court finds that special factors counsel hesitation in this context, and declines to find an implied Bivens cause of action for Fifth Amendment due process. This deficiency is not subject to cure by amendment of the complaint.

### 2.   Eighth Amendment – Excessive Force

  Plaintiff alleges that Defendants Helling, Gunn, and Graham assaulted him on August 6, 2015. Plaintiff also has alleged that Defendant Hellmuth failed to intervene to stop the assault.

  As indicated above, in Carlson, the Supreme Court extended Bivens to a claim arising from the Cruel and Unusual Punishments Clause of the Eighth Amendment based on the failure to provide adequate medical treatment. 446 U.S. 14. However, deliberate indifference to a serious medical need, see Carlson, 446 U.S. at 16 n.1, is different than Plaintiff's claims arising out of assault by officers and failure to intervene in such an assault. Accordingly, because Plaintiff's Eighth Amendment excessive force claims arise in a different context from those of Carlson, the Court also must employ a special factors analysis for this claim. For the same reasons that counsel hesitation in the Fifth Amendment context discussed above, the Court declines to find an implied Bivens cause of action arising out of Plaintiff's Eighth Amendment excessive force claim in these circumstances. This deficiency cannot be cured by amendment.

### 3.   Eighth Amendment – Denial of Medical Care

  "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Plaintiff must show (1) a serious medical need and (2) defendant's response to the need was deliberately indifferent. Jett, 439 F.3d at 1096. Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." Jett, 439 F.3d at 1096 (citing McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992). To establish a

deliberate indifference claim arising from a delay in providing medical care, a plaintiff must allege facts showing that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Plaintiff's allegations are insufficient to state a claim against Atwater Medical Staff or the Bureau of Prisons Offices. First, Plaintiff has not alleged any harm resulting from the delay in receiving an x-ray. To the extent that the order for an x-ray improperly identified his right hand, a complaint of negligence does not state a valid claim under the Eighth Amendment. See Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012). Second, Plaintiff has not alleged any harm to his hand resulting from the failure to receive x-rays or the failure to receive treatment. Third, Plaintiff has failed to adequately identify individual Atwater Medical Staff or Bureau of Prison Offices staff and has failed to link them to a violation of his constitutional rights. Although Plaintiff may sue individual prison employees for damages under Bivens, he must link each named defendant to a violation of his constitutional rights. In addition, there is no *respondeat superior* liability under Bivens. Iqbal, 556 U.S. at 676-77 ("In a § 1983 suit or a Bivens action . . . the term "supervisory liability" is a misnomer.") A government official is only liable for his or her own misconduct. Id.; Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011), cert. denied, 566 U.S. 982 (2012); Serra v. Lappin, 600 F.3d 1191, 1200 (9th Cir. 2010).

### III. Motion for Preliminary Injunction

In his May 14, 2018 motion, Plaintiff also requests that the Court issue an order directing prison officials to provide him with his legal property. (ECF No. 27.)

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 24 (2008) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Id. at 20 (citations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. Id. at 22 (citation omitted).

Federal courts are courts of limited jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by the requirement that as a preliminary matter, it have before it an actual case or controversy. City of L.A. v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). If the Court does not have an actual case or controversy before it, it has no power to hear the matter in question. Id. Requests for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation Reform Act, which requires that the Court find the "relief [sought] is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."

Furthermore, the pendency of this action does not give the Court jurisdiction over prison officials in general. Summers v. Earth Island Inst., 555 U.S. 488, 491–93 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. Summers, 555 U.S. at 491−93; Mayfield, 599 F.3d at 969.

Plaintiff has not met the requirements for the injunctive relief he seeks in this motion. In light of the Court's findings above, the Court cannot find that Plaintiff has shown a likelihood of success on the merits. In addition, no defendant has been ordered served, and no defendant has yet made an appearance. Thus, the Court lacks personal jurisdiction over any prison officials at U.S. Penitentiary Canaan, and it cannot issue an order requiring them to take any action.

**IV.     Conclusion and Order**

Plaintiff's complaint fails to state any cognizable claims for relief. Despite being provided with the relevant pleading and legal standards, as well as multiple opportunities to file a first amended complaint in compliance with such standards, Plaintiff has been unable and unwilling to cure the deficiencies by amendment. In light of Plaintiff's repeated refusals to file an amended complaint and the above analysis pursuant to Ziglar, further leave to amend would be futile and is not warranted. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

///

Accordingly, the Court HEREBY VACATES the screening order issued on November 17, 2017, (ECF No. 16).

Furthermore, IT IS HEREBY RECOMMENDED that:

1. This action be DISMISSED, with prejudice, for failure to state a claim; and
2. Plaintiff's motion for preliminary injunctive and other relief, (ECF No. 27), be DENIED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **June 14, 2018**    /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE